UNITED STATES, Plaintiff,

v.

SNUGGLES, INC., doing business as Royal Waterbeds Inc., Defendant.

Slip Op. 96–141.

Court No. 94–08–00492.

United States Court of International Trade.

Aug. 20, 1996.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director; Laurel A. Loomis, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice; Jeffrey Reim, U.S. Customs Service, of counsel, for Plaintiff.

Michael S. O'Rourke (Rode & Qualey), New York City, for Defendant.

## OPINION

POGUE, Judge:

Plaintiff, the United States Customs Service ("Customs"), invokes the Court's jurisdiction under 28 U.S.C. § 1582(1) (1994) to collect civil penalties and customs duties concerning certain merchandise imported by defendant Snuggles, Inc. ("Snuggles") in violation of 19 U.S.C. § 1592(a) (1994).[1] Customs' claims are before the Court for review pursuant to 28 U.S.C. § 2640(a)(6) (1994) on cross motions for partial summary judgment. The first question presented is whether plaintiff may assess a non-revenue based civil penalty, i.e. a penalty based on the value of the merchandise pursuant to 19 U.S.C. §§ 1592(c)(2)(B) or 1592(c)(3)(B), when it is also collecting lost duties. The second question is whether plaintiff should credit overpayments of duties made by defendant, in order to offset duties owed by defendant. The Court grants partial summary judgment to the plaintiff on both issues and denies defendant's motion.

### BACKGROUND

Defendant imported and then sold to retailers various waterbed related products from the Republic of Taiwan ("Taiwan") between November 23, 1985 and May 4, 1987. During that period, defendant made 37 entries. Incorrect documentation accompanying the merchandise deprived the United States of lawful duties. Customs seized defendant's entries and subsequently initiated an administrative penalty case. The parties were unable to agree on a settlement for the duties owed and the associated penalties. Defendant refused to pay the penalty imposed, and the United States initiated this action. The parties have not reached agreement as to either the level of culpability or the amount of penalty or lost duties owed for the first 24 entries, and have not reached agreement as to the level of culpability for the last 13 entries.

### UNDISPUTED FACTS

In the Amended Joint Stipulation submitted to the Court on May 7, 1996, the parties agreed that between October 1985 and May 1987 defendant improperly entered merchandise (waterbed products such as sheets, pillowcases, comforter shells, and polyvinyl chloride waterbed mattresses and liners) from Taiwan into the United States through the ports of Chicago, Seattle, and Los Angeles, in violation of 19 U.S.C. § 1592. Stip. ¶¶ 2, 3, 4, 8. Defendant incorrectly represented the quantity of merchandise being imported, incorrectly described the merchandise, misstated prices, and failed to provide Customs with proper visas. Stip. ¶¶ 8, 10. The first 24 of the 37 entries in question were subject to quota restrictions, which defendant violated. Stip. ¶ 6. On 15 of these first 24 entries, defendant also understated the price of some merchandise and overstated the price of other merchandise, resulting in simultaneous overpayments and underpayments of duties. Stip. ¶ 14. Customs' revenue loss calculations did not offset the amount defendant overpaid against the amount that defendant underpaid on these 15 entries. Stip. ¶ 15.

Customs' calculation of the actual loss of revenue resulting from defendant's misstatement of the price of the 24 entries, $48,496.91, is correct if defendant is not entitled to offset the overpayments and underpayments. Stip. ¶ 13. On the last 13 of the 37 entries, defendant understated the price, but the merchandise was not subject to quota restrictions. Stip. ¶¶ 17, 18. The amount of lost duties resulting from the violation associated with the last 13 entries is $3,310.52. Stip. ¶ 19. The defendant has not paid any part of the assessed penalties or the lost revenue demanded by Customs. Stip. ¶ 21.

---

1. 19 U.S.C. § 1592(a) provides

  (1) General rule

  Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence—

    (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

      (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or

      (ii) any omission which is material, or

    (B) may aid or abet any other person to violate subparagraph (A).

## STANDARD OF REVIEW

In actions brought for the recovery of any monetary penalty claimed under section 592 of the Trade Act of 1930, as amended, 19 U.S.C. § 1592 (1994), all issues are tried de novo, 28 U.S.C. § 2640(a)(6), including the amount of the penalty, 19 U.S.C. § 1592(e)(1). *See also United States v. Priority Products, Inc.,* 9 CIT 383, 385, 615 F.Supp. 591, 592 (1985), *aff'd,* 793 F.2d 296 (Fed.Cir.1986).

The Court finds that there are no genuine issues of material fact, the dispositive issues to be resolved are legal in nature, and, therefore, summary judgment is proper. USCIT R. 56(d).

## DISCUSSION

■ The first question before the Court is whether, with regard to the first 24 entries, plaintiff may assess a non-revenue rather than a revenue-based civil penalty when there is a loss of duties for misstatements of the price of the merchandise. Section 1592 has two relevant subsections: (c), which deals with maximum penalties; and (d), which deals with deprivation of lawful duties.[2] The issue is whether, when lost duties are collected under (d), Customs retains its discretion to choose between revenue-based[3] and non-revenue-based penalties[4] provided under (c). The threshold question on this issue is whether defendant committed separate and distinct violations within single entries.

■ Plaintiff argues that defendant has committed separate and distinct violations on the first 24 entries and should therefore face the respective penalties for each. Defendant violated the quota restriction on the imported merchandise, introducing the merchandise without the proper visa. See Stip. ¶¶ 6, 8, 10. At the same time, defendant also falsely stated the price of this merchandise, thus lowering the amount of duties assessed. Stip. ¶ 14.

Although Customs may not issue multiple penalties for a single violation, plaintiff asserts that section 1592 does not contain any limitation regarding the number of violations that may be committed with respect to an entry. Thus, plaintiff claims that Customs may collect *separate* penalties for separate violations on the same merchandise. Plaintiff relies on *United States v. F.H. Fenderson, Inc.,* 11 CIT 199, 205, 658 F.Supp. 894, 899 (1987) and *United States v. Valley Steel Products Co.,* 15 CIT 268, 270, 765 F.Supp. 752, 753 (1991) (Customs may seek a penalty which is greater than the proven loss of revenue because the purpose of the penalty is to remedy a wrong). Furthermore, plaintiff adds, subsection (d) of 19 U.S.C. § 1592 is an independent avenue for the restoration of duties "lost as a result of a violation of subsection (a) [which] are recoverable by the United States 'whether or not a monetary penalty [pursuant to subsection (a)] is assessed.'" *United States v. Blum,* 858 F.2d 1566, 1569 (Fed.Cir.1988) (citing section

---

**2.** 19 U.S.C. § 1592(c) (maximum penalties) provides, under gross negligence and negligence:
(2) Gross negligence
A grossly negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—
(A) the lesser of—
(i) the domestic value of the merchandise, or
(ii) four times the lawful duties of which the United States is or may be deprived, or
(B) if the violation did not affect the assessment of duties, 40 percent of the dutiable value of the merchandise.
(3) Negligence
A negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—
(A) the lesser of—
(i) the domestic value of the merchandise, or
(ii) two times the lawful duties of which the United States is or may be deprived, or

(B) if the violation did not affect the assessment of duties, 20 percent of the dutiable value of the merchandise.
19 U.S.C. § 1592(d) (deprivation of lawful duties, taxes or fees) provides:
Notwithstanding section 1514 of this title, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, the Customs Service shall require that such lawful duties, taxes, or fees be restored, whether or not a monetary penalty is assessed.

**3.** 19 U.S.C. § 1592(c)(2)(A) in the case of grossly negligent violation, 19 U.S.C. § 1592(c)(3)(A) in the case of negligent violation.

**4.** 19 U.S.C. § 1592(c)(2)(B) in the case of grossly negligent violation, 19 U.S.C. § 1592(c)(3)(B) in the case of negligent violation.

1592(d), and reversing 11 CIT 316, 660 F.Supp. 975 (1987) on the same issue). "The statutory scheme provides the United States with means both (1) to impose a penalty for improper conduct *and* (2) to recover import duties lost as a result of the improper conduct." *Id.*

Defendant counters that the act of importing constituted a single violation with both revenue and non-revenue consequences. Defendant claims that once Customs determines that there is a loss of revenue for an entry, it is precluded from using a percent of the dutiable value of the merchandise, i.e., a non-revenue penalty, as the basis of a civil penalty on that entry. The statute, according to defendant, does not grant Customs the option to choose which of the two penalty formulas (revenue-based or non-revenue based) to impose.[5] Defendant objects that plaintiff's reliance on *Fenderson, Valley Steel,* and *Blum* is misplaced because in each of these cases separate and distinct defendants committed separate and distinct violations, as opposed to the single defendant in this action who committed one act resulting in one violation with both revenue and non-revenue facets. Defendant agrees that civil and criminal penalties can arise from the same act against a single individual, and also that more than one party can be held liable for actions arising out of a single entry. However, defendant claims that plaintiff's precedents are distinguishable based either on the number of participants involved or on the fact that they involved criminal acts rather than the civil acts involved here.[6]

Thus, defendant maintains that the amount of the civil penalty in this case must be calculated on a "loss of revenue basis" pursuant to subsection 1592(c)(2)(A) (gross negligence) or subsection 1592(c)(3)(A) (negligence). As a result, the penalty for defendant's improper visas should be limited to a multiple of the duties lost as a result of defendant's undervaluation.[7] Defendant relies on *TIE Communications, Inc. v. United States,* slip op. 94–72, 1994 WL 176918 (Ct. Int'l Trade, May 5, 1994) where the court found that "the true significance of subsection (d) is merely to contrast the discretion with which a Customs officer can mitigate a timely brought action on penalties against that officer's lack of discretion to mitigate lawfully owed duties that are discerned as a result of the same timely brought action for ... fraud, gross negligence or negligence."

5. Defendant argues that the *Customs Procedural Reform and Simplification Act of 1978* and the associated changes in section 1592 evidence clear Congressional intent to restructure the penalty provision, so that it is only when no loss of revenue occurs that a penalty may be enforced based on a percentage of the appraised value of the merchandise. Defendant claims that assessing multiple penalties would run contrary to Congressional intent in amending section 1592. In 1978 in his appearance regarding the proposed changes to § 1592, Customs Commissioner Robert E. Chasen said to the Senate Subcommittee on International Trade:

"The initial penalty would no longer be equal to the full forfeiture value of the merchandise. Instead, it would be equal to a multiple of the loss of revenue, or, if no revenue loss is involved, a percentage of the appraised value of the merchandise."

6. Defendant's argument is different from the one raised in *United States v. Ziegler Bolt and Parts Co.,* slip op. 95–3, 1995 WL 13448 (Ct. Int'l Trade, Jan. 13, 1995). In that case, the defendant attempted to rely on *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (the Government may not impose a criminal penalty and then bring a separate civil action based on the same conduct and impose a civil penalty which is disproportionate to the damages caused) to support the argument that imposition of civil penalties exposed defendant to double jeopardy, in violation of the Fifth Amendment to the United States Constitution. In *Ziegler,* the Court held that an "action to recover civil penalties under 19 U.S.C. § 1592 does not violate the Double Jeopardy Clause of the United States Constitution because penalties under section 1592 amount to a form of liquidated damages which the court may discretionally assign." *Ziegler,* slip op. 95–3 at 9; *see also United States v. Valley Steel,* 14 CIT 14, 17, 729 F.Supp. 1356, 1359 (1990) (footnote omitted) and *United States v. Dantzler Lumber & Export Co. et al.,* 16 CIT 1050, 1056–57, 810 F.Supp. 1277, 1283–84 (1992). *Cf. United States v. Ursery,* — U.S. —, ————, 116 S.Ct. 2135, 2143–44, 135 L.Ed.2d 549 (1996) ("[I]n rem civil forfeiture is a remedial civil sanction, distinct from potentially punitive in personam civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause.")

7. Defendant cites *United States v. Jac Natori,* slip op. 95–126 at 12, 1995 WL 431167 (Ct. Int'l Trade, July 14, 1995) (imposing a loss of revenue penalty for defendant's grossly negligent actions which included improper visas).

*Id.* at 15. This, defendant claims, illustrates the fact that Customs does not have discretion in determining which penalty to use under 19 U.S.C. § 1592(c) when a loss of revenue is involved.[8]

The Court finds defendant's arguments unconvincing and contrary to the court's interpretation of section 1592. There is nothing in the language of subsections 1592(c) or (d) which supports defendant's interpretation.

Prior to the enactment of the Customs Procedural Reform and Simplification Act of 1978, if a court determined that a violation of section 592 had occurred, it had no option but to enforce the penalty for forfeiture of the goods in question.[9] The statute now provides for three categories of penalty assessments, depending on the level of culpability: fraud, gross negligence, or negligence. 19 U.S.C. § 1592(c). Although "a defendant in a section 1592 action may be forced to pay the greatest penalty applicable under that provision even if his unlawful conduct did not result in any loss of revenue to the United States.... the legislative history makes clear that an important motivation for amending section 1592 was Congress' desire to alleviate the harsh consequences of the forfeiture penalty." *United States v. Gordon,* 10 CIT 292, 297, 634 F.Supp. 409, 415 (1986).

By replacing the forfeiture with varying monetary penalties, Congress has introduced a remedial purpose into section 1592.[10] This court has clarified that both punitive and remedial purposes characterize section 1592. "[T]he penalty imposed under section 1592 differs with the degree of scienter or culpability of the defendant.... [which] is essential to retribution, a principle of punishment rather than of civil damages." *Gordon,* 10 CIT at 297, 634 F.Supp. at 414–15 (1986); *see also United States v. Modes, Inc.,* 17 CIT 627, 635–36, 826 F.Supp. 504, 512 (1993). "On the other hand, section 1592 has a reme-

dial effect as well.... This remedial function was bolstered by the amendment of section 1592 which, as noted, now links, under certain circumstances, the penalty imposed to the lawful duties of which the United States was deprived." *Gordon,* 10 CIT at 297, 634 F.Supp. at 415.

As this court held in *United States v. Valley Steel Products Co.,* 15 CIT 268, 270, 765 F.Supp. 752, 753 (1991), the purpose of this penalty is not just to replace lost levies, but to remedy a wrong, whether or not that wrong can be traced to precise revenue losses. Furthermore, this court has consistently held that Customs can "assess separate penalties for separate violations on the same merchandise." *Fenderson,* 11 CIT at 205, 658 F.Supp. at 899. The parties have stipulated that defendant violated the quota restrictions and also falsely stated the price of the merchandise. Stip. ¶¶ 6, 8, 10, 14. Therefore, defendant committed separate violations on the same entries. Subsections 1592(c) and (d) clearly contemplate non-revenue and revenue based penalties for these separate violations.

This result does not contrast with the result in *TIE Communications,* slip op. 94–72, 1994 WL 176918 (Ct. Int'l Trade, May 5, 1994) cited by defendant. In *TIE,* the issue was whether the statute of limitations applied to both subsections 1592(a) and 1592(d) in the same way. Thus, defendant's reading of *TIE* is out of context and inapposite to the case presented by the parties.

Moreover, the fact that a revenue loss resulted from one violation does not preclude assessment of a non-revenue based penalty for a separate, non-revenue violation on the same entry, such as the visa violation in the instant case. The Federal Circuit has made it clear that Customs can both impose a

---

8. Defendant also contends that plaintiff is attempting to impose a "primary result" test that is not written in the statute, and that Customs Regulations, 19 C.F.R. § 171, App. B differentiate between "revenue-loss violations" and "non-revenue-loss violations" but do not contain a "primary result" standard.

9. Pub.L. No. 95–410, Title I, Sec. 110(a), 92 Stat. 888, 893–97 (1978). *See* S.Rep. No. 778, 95th Cong., 2d Sess. 2, 18–19, *reprinted in* 1978 U.S.C.C.A.N. 2211, 2213, 2230–31; *see also United States v. One Red Lamborghini,* 10 CIT 7, 11 & n. 6, 625 F.Supp. 986, 989 & n. 6 (1986).

10. *See generally Helvering v. Mitchell,* 303 U.S. 391, 397–98, 58 S.Ct. 630, 632–33, 82 L.Ed. 917 (1938) (a civil action by the Government is usually remedial in nature).

penalty and request unpaid duties. *Blum,* 858 F.2d at 1569. Defendant's interpretation that the assessment of the non-revenue penalty and the restoration of unpaid duties cannot be applied to the same entry would eviscerate the non-revenue provisions of the statute. To allow subsection 1592(d) to preclude the application of the non-revenue penalties in subsection 1592(c) would defeat the statutory purpose of promoting correct reporting of the quantity of imported goods, and could result in the assessment of trivial penalties for serious non-revenue violations whenever a violator could demonstrate some nominal underpayment of duties on the same entry.

Finally, other considerations support plaintiff's position. For the first 24 entries plaintiff is not seeking to impose both a penalty for the non-revenue violations as well as a penalty based on the loss of revenue. For the first 24 entries, plaintiff is only seeking a penalty for the *non-revenue* violation of the visa requirement. For the last 13 entries plaintiff is seeking a loss of revenue penalty because there was no non-revenue violation. Thus, plaintiff's claim does not exceed the statutory ceiling represented by the domestic value of the merchandise.[11]

■ In the case of separate violations, the choice of whether to pursue both penalties, non-revenue and revenue-based, or only one of them, and which one, is within Customs' discretion. Multiple provisions generally give Customs discretion in assessing a penalty. For example, section 1618 provides that Customs "may [assess penalties] that [it] deems reasonable and just." Customs *may* choose to propose a fixed penalty not related to the value of the merchandise but believed sufficient to have a deterrent effect for violations "where the loss of revenue is nonexistent or minimal."[12]

Consequently, on the first question presented, the Court concludes that plaintiff may assess a non-revenue-based penalty for defendant's violation of the quota restrictions and visa requirements.

■ The second question before the Court is whether defendant's overstatements and understatements within the same entry may be "offset" so as to reduce the total amount owed to Customs.

Plaintiff claims that defendant is not entitled to a "credit" for overpayment of duties. Overstating the price of some merchandise, plaintiff argues, is irrelevant to the application of subsection (d) to defendant's undervaluation. Moreover, to allow a "credit" would provide violators of section 1592 a benefit unavailable even to non-violators who may have inadvertently overpaid duties.

Defendant counters that the offsets should be allowed, thereby reducing the total loss of revenue violations, because the overpayments and underpayments were made within the same entry. As support for this proposition, defendant cites Treasury Decision 79–160 (13 Cust. Bull. 398 (1979)), effective June 4, 1979, which includes a proposal to expand the definition of "actual loss of duties" included in 19 C.F.R. § 162.71 "to provide that, for purposes of assessing any penalty, the actual loss of duties shall be reduced by the amount of any erroneous overpayment of duties by the alleged violator." 13 Cust. Bull. at 403. The proposal was not adopted because Customs did not believe that the Act could be construed to reduce the actual loss of duties resulting from underpayments by offsetting them with overpayments on *different* entries. *Id.* at 403–404. However, because the defendant seeks to offset overpayments and underpayments within a *single* entry, the defendant claims that the reasoning of the unadopted proposal applies and therefore the offsets should be allowed.[13]

---

11. The legislative history of Section 1592, and particularly the 1978 revisions softening the harshness of the forfeiture requirement, indicate Congressional intent that penalties and duties imposed should not exceed the domestic value of the goods in question. *See also Jac Natori,* slip op. 95–126 at 12 ("The plaintiff should be awarded ... which sum the record indicates is less than the domestic value of the goods to which the duties apply.")

12. 19 C.F.R. § 171, App. B(C)(1)(c) (1995).

13. The Treasury Decision addressed a net overpayment on a particular entry, not a reduction of a net underpayment on that entry. The Treasury Decision does not mention that there would be any sort of 'credit' or refund for the overpayment, merely that there would be no duties owed on the entry in which there was an overpayment.

Defendant's claim is without merit. In fact, defendant did not file a protest requesting a correction of its overpayments.[14] Inasmuch as defendant failed to take the requisite steps to secure a correction, the decisions of Customs officers as to value, classification, rate, and amount must stand as final and conclusive as far as those importations are concerned. *Dooley v. United States,* 182 U.S. 222, 223, 21 S.Ct. 762, 762–63, 45 L.Ed. 1074 (1901); *United States v. Uniroyal, Inc.,* 69 C.C.P.A. 179, 687 F.2d 467, 471 (1982) (Congress did not intend the CIT to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service); *United States v. Utex Int'l, Inc.,* 857 F.2d 1408, 1412 (Fed.Cir.1988).[15]

In a similar, more recent case, the defendant argued that there were instances in which the defendant under-shipped merchandise, and that, if "netted out," the quantities would be even or less than what defendant declared. *Jac Natori,* slip op. 95–126 at 10. The court rejected defendant's claim and ruled that "whatever the precise arithmetic, it in no way negates the fact that [defendant] knowingly misdeclared merchandise on the entry documents and did not obtain visas for all of the goods." *Id.*

Consequently, the Court will award Customs, in addition to the civil penalty, the unpaid duties owed because of defendant's under-reporting. The statute provides that "if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, the Customs service shall require that such lawful duties, taxes, or fees shall be restored, whether or not a monetary penalty has been assessed." 19 U.S.C. § 1592(d). Unlike civil penalties, an award of lost duties is not discretionary.

### CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for partial judgment and denies defendant's cross-motion for partial summary judgment. The parties are hereby directed to present to the Court a proposed stipulated judgment within thirty days, or request a trial.

### ORDER

Upon reading plaintiff's motion for partial summary judgment and defendant's cross-motion for partial summary judgment, upon consideration of all other papers and proceedings had herein, and after due deliberation, having rendered a decision herein, it is hereby

**ORDERED** that plaintiff's motion for partial summary judgment is granted and defendant's motion for partial summary judgment is denied; and it is further

**ORDERED** that the parties shall present to the Court a proposed stipulated judgment within thirty days of this order, or request a trial.

**14.** 19 U.S.C. § 1514(a)(5) (1994) (Protest against decisions of the Customs Service) provides:

> (a) Finality of decisions; return of papers
> [D]ecisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—
> ....
> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;
> ....
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade....

In cases not involving fraud, "[a] protest of a decision, order, or finding ... shall be filed with such customs officer within 90 days after but not before—(A) notice of liquidation or reliquidation ..." 19 U.S.C. § 1514(c)(2)(A). Where a protest is filed more than 90 days after notice of liquidation, the Court does not have jurisdiction over an action contesting the denial of such protest. 28 U.S.C. § 1581(a); 19 U.S.C. § 1514(c)(2). *See Star Sales & Distributing Corp. v. United States,* 10 CIT 709, 663 F.Supp. 1127 (1986); *see also Gulbenkian v. United States,* 186 F. 133 (C.C.A.2 N.Y.1911).

**15.** Congress did not intend to allow any other mode to redress an alleged wrong in the operation of the laws for the correction of duties on imported merchandise. *Nichols v. United States,* 74 U.S. (7 Wall.) 122, 19 L.Ed. 125 (1868).